BARTLETT MILLING COMPANY, L.P., PLAINTIFF v. WALNUT GROVE AUCTION AND REALTY CO., INC., ROCKY CREEK DAIRY, INC., AND BROKER DAIRY, INC., DEFENDANTS

No. COA07-329

(Filed 19 August 2008)

### 1. Creditors and Debtors— action between two creditors— note with mistaken interest rate—refusal to enforce

In an action between creditors arising from their efforts to secure their interests as a dairy farm failed, the trial court did not err by refusing to enforce a promissory note given in settlement of a default judgment and held by plaintiff, or by refusing to grant plaintiff's motions for directed verdict and judgment n.o.v. The parties were in accord that the agreement was executed under a mistaken belief concerning interest rates, and the trial court's determination that directing judgment on damages based on the agreement would be inequitable was not an abuse of discretion. It was therefore the province of the jury to weigh all the evidence and make a determination of plaintiff's damages resulting from the conversion of its property.

### 2. Unfair Trade Practices— actions between creditors—failing dairy farm

In an action between creditors arising from their efforts to secure their interests as a dairy farm failed, the trial court did not err by denying plaintiff's motions for directed verdict and judgment n.o.v. on an unfair and deceptive practices claim or by refusing to find unfair and deceptive actions as a matter of law following the jury's verdict. Some of plaintiff's argument was not sufficiently supported or abandoned under the Rules of Appellate Procedure; there were no findings or stipulations asserting a fiduciary duty to support the argument concerning unfair practices in breach of a fiduciary duty; and, while the stipulations and jury findings supported a conversion claim, the additional egregious

acts necessary for the heightened penalty of unfair and deceptive trade practices were not established.

## 4. Agriculture— failing dairy farm—cattle auction—conversion of proceeds

In an action arising from the efforts of creditors to secure their interests in a failing dairy farm, the trial court did not err by granting plaintiff's motion for summary judgment determining that defendants had converted the proceeds of a cattle auction in light of the unjustified manner in which defendants took possession of and auctioned the cattle, failed to adhere to an agreement to hold the auction proceeds in escrow pending resolution of the parties' rights to the auction proceeds, and dispersed the proceeds among themselves contrary to North Carolina law.

## 5. Pleadings— amendment—no delay or prejudice argued

The trial court did not abuse its discretion by allowing plaintiff's motion to amend its complaint where defendants made no argument that the motion to amend was for the purpose of undue delay, that it caused delay, or that they were prejudiced by any delay.

## 6. Agriculture— sale of cattle—refusal to escrow funds—motion in limine denied

The trial court did not err by denying defendants' motion in limine to exclude any evidence relating to their refusal to escrow funds received from the sale of cattle used as collateral for a failing dairy farm. Although defendants' argument was in part that the prior denial of plaintiff's motion to compel escrow decided the issue, there was no evidence that the denial of plaintiff's motion was a final disposition of the issue. The evidence was relevant and was not substantially outweighed by prejudice to defendants.

## 7. Evidence— mootness—evidence of dismissed claim

Defendants' argument about excluded evidence was moot where it concerned an unfair and deceptive trade practices claim that was dismissed as a matter of law.

## 8. Evidence— default judgment—incorrect interest rate—corrected by court—not prejudicial or misleading

In an action between creditors of a failed dairy farm, the trial court did not err by admitting evidence about plaintiff's default

BARTLETT MILLING CO. v. WALNUT GROVE AUCTION & REALTY CO.

[192 N.C. App. 74 (2008)]

judgment against the owner of the dairy farm, which included an illegal interest rate. The trial court reduced the interest rate, and defendants offered no evidence in support of how this evidence misled the jury, or prejudiced them in any way.

**9. Agriculture— action between creditors—incorrect interest rate—corrected by trial court**

In an action between the creditors of a failed dairy farm, the trial court did not err by denying defendants' motions for directed verdict based on an incorrect interest rate where the trial court applied the correct rate.

**10. Agriculture— sale of dairy herd—action between creditors—unclean hands**

The trial court did not abuse its discretion by refusing to instruct the jury on the principle of marshaling in an action rising from the efforts of creditors to protect their interests as a dairy farm failed. The facts before the trial court concerning the sale of cattle included defendants acting without clean hands.

**11. Costs— not awarded—settlement offer—less than judgment plus costs awarded** .

The trial court did not err by not awarding defendants costs where the final judgment plus costs awarded to plaintiff exceeded the amount proffered in defendants' offer of judgment. N.C.G.S. § 1A-1, Rule 68.

Appeal by plaintiff and cross-appeal by defendant from an order entered 22 August 2006 by Judge Larry G. Ford in Iredell County Superior Court. Heard in the Court of Appeals 29 October 2007.

*Blanco Tackabery Combs & Matamoros, P.A., by Peter J. Juran, for plaintiff-appellant / cross-appellee.*

*Hamilton Moon Stephens Steele & Martin, PLLC, by David G. Redding and Mark R. Kutny, for defendants-appellees/cross-appellants.*

JACKSON, Judge.

Keith and Talley Stephens ("the Stephens") owned and operated a dairy farm that failed. The Stephens had numerous creditors, including Bartlett Milling Company, L.P. ("plaintiff"). On 19 July 1999, plaintiff obtained a judgment in the amount of $102,964.04, plus one

and a half percent monthly interest accruing from 17 August 1998, against the Stephens for defaulting on their payment for cattle feed purchased from Bartlett.

After entry of judgment, the Stephens requested assistance from plaintiff in restructuring their finances. Plaintiff agreed to remove its judgment from the record, accept a lower total payment, and accept payments over time, secured by a security interest in the Stephens' cattle herd ("the Stephens' herd") and its proceeds. A Promissory Note was executed on 11 August 2000, pursuant to which plaintiff agreed to accept $105,981.03, plus interest at a lower interest rate, instead of the full judgment, provided that the Stephens fulfilled the terms set forth in the Note. On 11 August 2000, the Stephens executed a security agreement (along with the 11 August 2000 note, "the Stephens agreement") securing all indebtedness of the Stephens to Bartlett and granting plaintiff a security interest in, *inter alia*, the Stephens' herd. Subsequent to the security agreement, defendants sold additional cattle to the Stephens. Defendants Rocky Creek Dairy, Inc. ("Rocky Creek") and Broker Dairy, Inc. ("Broker Dairy") perfected security interests in the cattle sold to the Stephens, though Walnut Grove Auction and Realty Co., Inc. ("Walnut Grove", and collectively with Rocky Creek and Broker Dairy, "defendants") failed to do so. The Stephens subsequently defaulted on the Stephens agreement, pursuant to which (1) the entire amount of the judgment plus accrued interest became due and payable, and (2) the security interest in the Stephens' herd remained intact.

As of May 2002, the Stephens continued having difficulty meeting their financial obligations. Walnut Grove, Rocky Creek, and Broker Dairy, along with Terry Jolly ("Jolly") of First Community Bank, held periodic meetings throughout the spring and summer of 2002 to discuss means of recouping the money owed to them by the Stephens. This group of creditors designated Jolly as the responsible party for maintaining the Stephens' dairy checkbook and payment of dairy expenses in order to control the flow of money in and out of the Stephens' farm. Plaintiff was not invited to participate in these meetings. Thereafter, defendants took possession of a portion of the Stephens' herd and made plans to sell it at an auction. The Stephens were not in default of their obligations to the creditors—except for plaintiff—at this time.

On 30 October 2002, defendants, acting under the name "State Road Dairy," sold approximately 300 cattle from the Stephens' herd at an auction run by Walnut Grove. Both before and after the auction,

plaintiff notified defendants and their attorneys that plaintiff held a senior security interest in the Stephens' herd and its proceeds. Walnut Grove informed plaintiff that the proceeds of the auction would be held in trust pending a determination of the parties' respective rights to the auction proceeds as required by North Carolina auction law. Plaintiff's attorney sent two letters, both prior to and after the auction, confirming that the auction proceeds would be held in escrow pending a determination of the creditors' priority rights. Plaintiff did not attempt to stop the auction.

The auction generated $357,275.00 in proceeds. After payment of the costs of the sale—which amounted to $17,000.00—Rocky Creek was to receive $165,000.00, Walnut Grove was to receive $110,000.00, and Broker Dairy was to receive $65,000.00. Defendants' answer to plaintiff's amended complaint states that all proceeds were disbursed pursuant to Chapter 25, Article 9 of the North Carolina General Statutes (Uniform Commercial Code), and presented as an affirmative defense that they were entitled to sell the cattle, and disburse the funds as they did pursuant to North Carolina General Statutes, sections 25-9-610 and 25-9-615. The Settlement Sheet did not provide that plaintiff would receive any of the proceeds.[1] After defendants refused to pay plaintiff according to its purported senior lien interest, plaintiff commenced this action on 7 February 2003.

On 21 December 2005, the trial court granted partial summary judgment in favor of plaintiff on the issue of liability on the conversion claim, leaving for trial the issues of unfair and deceptive trade practices, damages for conversion, and the unsettled issue of punitive damages.

During the course of the trial, the trial court, *sua sponte*, raised the issue of whether the Stephens agreement was flawed on the grounds that it was based upon a judgment bearing interest at a higher rate than that allowed by law. Specifically, the trial court held that because the Stephens' debt arose out of an agricultural loan, a default rate of eighteen percent was unenforceable under North Carolina General Statutes, section 24-5. The trial court reduced the amount of judgment interest to eight percent and maintained the interest of the Stephens agreement at eighteen percent. The trial court denied plaintiff's motion for directed verdict based upon the original amount of the Stephens agreement. The trial court also declined to send plaintiff's punitive damage claim to the jury.

---

1. Defendants received some portion of the proceeds in March and April of 2003.

BARTLETT MILLING CO. v. WALNUT GROVE AUCTION & REALTY CO.

[192 N.C. App. 74 (2008)]

On 26 May 2006, the trial court entered judgment for plaintiff in the amount of $44,232.88. This amount constituted $75,000.00 for plaintiff's claim of conversion, plus $19,232.88 in interest, for a total of $94,232.88, less $50,000.00 already paid to plaintiff in a settlement with an alleged joint tortfeasor. The trial court denied plaintiff's motion for judgment notwithstanding the verdict based upon the original amount of the Stephens agreement. Thereafter, both plaintiff and defendants filed timely notices of appeal. Additional relevant facts will be discussed below.

### Plaintiff's Appeal

[1] In plaintiff's first two arguments, it contends that the trial court erred as a matter of law in refusing to enforce the promissory note of 11 August 2000 according to its terms, and by refusing to grant plaintiff's motions for directed verdict and judgment notwithstanding the verdict. We disagree.

"We review questions of law *de novo.*" *Staton v. Brame,* 136 N.C. App. 170, 174, 523 S.E.2d 424, 427 (1999). "This Court's review of a trial court's grant of a JNOV is the same as the review of the grant of a motion for directed verdict." *Asfar v. Charlotte Auto Auction,* 127 N.C. App. 502, 504, 490 S.E.2d 598, 600 (1997) (citation omitted). The question is whether the non-moving party has presented essential evidence to support its claim; all evidence should be taken in the light most favorable to the non-moving party, and all discrepancies in the evidence should be resolved in the non-moving party's favor. *Id.*

On 19 July 1999 default judgment was entered by the Superior Court of Iredell County in *Bartlett Milling Co. v. Stephens.* This was a default judgment entered against the Stephens, declaring they were in default on their obligations to plaintiff, and ordering the Stephens to pay $102,964.04 plus eighteen percent interest from 17 August 1998 until paid. Defendants were not parties to this action. Both parties in the instant action agree the interest awarded on this default judgment was in error, as the maximum amount allowed by law for default on an agricultural loan is eight percent. N.C. Gen. Stat. §§ 24-5(a) and 24-1 (2007).

Plaintiff also argues in its brief, and argued at trial, that pursuant to the Stephens agreement, executed between them and the Stephens on 11 August 2000, the default judgment against the Stephens was satisfied. The parties agree that the interest rate calculated for the Stephens agreement was incorrect as a matter of law, as

it erroneously adopted the eighteen percent rate included in the default judgment in contravention to the maximum legal rate for the extension of credit for agricultural loans, which is capped at eight percent. *Id.*

Section 24-5, however, is limited to actions for breach of contract. Plaintiff had no action against defendants for breach of the Stephens agreement, as defendants were not parties thereto. The instant action is one for the tort of conversion. The provisions of section 24-5 do not directly apply to plaintiff's action against defendants in the instant case.

Our trial courts are general courts of both law and equity. *Kiser v. Kiser*, 325 N.C. 502, 507, 385 S.E.2d 487, 489 (1989); *Reynolds v. Reynolds*, 208 N.C. 578, 624, 182 S.E. 341, 369 (1935). Trial courts have the discretionary power to "grant, deny, limit, or shape" equitable relief as they deem just. *Sara Lee Corp. v. Carter*, 351 N.C. 27, 36, 519 S.E.2d 308, 314, *reh'g denied*, 351 N.C. 191, 541 S.E.2d 716 (1999). Unjust enrichment is an equitable doctrine. *Collins v. Davis*, 68 N.C. App. 588, 591, 315 S.E.2d 759, 761 (1984). It is clear from the record and transcripts that the trial court in the instant case was concerned that a directed verdict in favor of plaintiff for the amount due under the Stephens agreement would unjustly enrich plaintiff due to plaintiff's and the Stephens' mistaken beliefs of both fact and law that the amount of the interest award under the default judgment was correct and legal.

Instead, in an attempt to be fair to both parties, the trial court allowed evidence of the Stephens agreement to be presented to the jury as evidence of the damages suffered by plaintiff, along with other damages evidence.

The trial court informed the jury that the interest calculation mandated by the Stephens agreement was based upon a mutual mistake, and directed plaintiff to recalculate the amount due pursuant to that agreement based upon the trial court's understanding of the law. This calculation reduced the interest rate for the period between entry of the default judgment until execution of the Stephens agreement from eighteen percent to the legal rate of eight percent, but maintained the eighteen percent interest rate for the period following the execution of the Stephens agreement. We need not address the correctness of the trial court's decision requiring recalculation of the interest due on the Stephens agreement for reasons stated below.

This recalculated amount, presented to the jury as the amount the Stephens were obligated to plaintiff under their agreement, was $109,772.07. The jury returned a damages amount of $75,000.00 for plaintiff's conversion judgment against defendants, nearly $35,000.00 less than the $109,772.07 amount in evidence that the jury was informed the Stephens owed plaintiff for the breach of their agreement. It is clear the jury did not rely on the Stephens agreement to determine plaintiff's damages, but looked to the other evidence of plaintiff's actual losses based upon its issuance of credit to the Stephens. The measure of damages for conversion is the fair market value of the converted property at the time of the conversion, plus interest. *Marina Food Assoc., Inc. v. Marina Restaurant, Inc.*, 100 N.C. App. 82, 94, 394 S.E.2d 824, 831 (1990). In the instant case, defendants converted plaintiff's property by selling cattle in which it had a superior security interest and retaining the proceeds. It was the province of the jury to determine what the value of plaintiff's security interest in the converted cattle was at the time of the sale. *Di Frega v. Pugliese*, 164 N.C. App. 499, 510, 596 S.E.2d 456, 464 (2004).

We hold that the trial court did not abuse its discretion in refusing to direct verdict on damages based upon the Stephens agreement. The parties were in accord that this agreement was executed under a shared, mistaken belief that both it and the directed verdict were not contrary to law. The trial court's determination that doing so would be inequitable, and potentially lead to the unjust enrichment of plaintiff, was not "manifestly unsupported by reason" or "so arbitrary that it could not have been the result of a reasoned decision." *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 607, 646 S.E.2d 826, 833 (2007). It was therefore the province of the jury to weigh all the evidence, and make a determination of plaintiff's damages resulting from defendants' conversion of its property. The jury's determination "must be given the utmost consideration and deference". *Pugliese*, 164 N.C. App. at 510, 596 S.E.2d at 464 (citations and quotations omitted). For the same reasons stated above concerning the trial court's denial of plaintiff's motion for a directed verdict, we hold that the trial court did not abuse its discretion in denying plaintiff's motion for judgment notwithstanding the verdict. These arguments are without merit.

[2] In plaintiff's third and fourth arguments, it contends the trial court erred in denying plaintiff's motions for directed verdict and judgment notwithstanding the verdict concerning its claim for unfair and deceptive trade practices (UDTP), and in failing to determine as

a matter of law following the jury's verdict that defendants' actions constituted unfair and deceptive trade practices. We disagree.

Initially, we note that plaintiff has provided no authority in support of its third argument, that the trial court should have granted its motions for directed verdict and judgment notwithstanding the verdict. Its argument consists of its bare assertion that because the jury found defendants had committed every action submitted in support of its unfair and deceptive trade practices claim (which, of course, had no bearing on the trial court's denial of its motion for directed verdict), "it follows as a matter of logic" that one or the other of its motions should have been granted. This constitutes a gross violation of Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure, and subjects this argument to dismissal. *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 200, 657 S.E.2d 361, 367 (2008); *Viar v. N.C. DOT*, 359 N.C. 400, 610 S.E.2d 360, *reh'g denied*, 359 N.C. 643, 617 S.E.2d 662 (2005).

In its fourth argument, plaintiff contends the trial court erred by refusing to determine that defendants' actions constituted unfair and deceptive trade practices. "[U]nder N.C.G.S. § 75-1.1, it is a question for the jury as to whether [a party] committed the alleged acts, and then it is a question of law for the court as to whether these proven facts constitute an unfair or deceptive trade practice." *Richardson v. Bank of Am., N.A.*, 182 N.C. App. 531, 540, 643 S.E.2d 410, 416 (2007) (citation and quotations omitted). "To succeed on a claim for UDTP, a plaintiff must prove: '(1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby.' " *Griffith v. Glen Wood Co.*, 184 N.C. App. 206, 217, 646 S.E.2d 550, 558 (2007) (citations omitted). " 'A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.' " *Id.* (Citations omitted).

Plaintiff argues that Walnut Grove, as the auctioneer, *per se* committed unfair and deceptive trade practices by violation of a regulatory statute. Although the jury found that "In Walnut Grove's case, [it failed] to comply with the regulatory requirements of the NCAC[,]" plaintiff fails to mention this finding in its brief, much less argue what provisions of the NCAC Walnut Grove violated, and why any such violation constituted a *per se* unfair and deceptive trade practice. Contrary to plaintiff's argument, there is no support for the proposition that "[v]iolation of statutes generally constitutes a *per se* decep-

tive or unfair trade practice . . . ." As one of the opinions plaintiff cites as authority for this position clearly states: the "North Carolina Supreme Court has held violation of a statutory provision designed to protect the consuming public *may* constitute an unfair and deceptive practice as a matter of law." *Moretz v. Miller*, 126 N.C. App. 514, 517, 486 S.E.2d 85, 87, *rev. denied*, 347 N.C. 137, 492 S.E.2d 24 (1997) (emphasis added) (citation omitted). *Moretz* further qualifies this statement by stating that whether violation of a statute constitutes unfair and deceptive trade practices generally depends on the facts of the case, and "when it offends established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* at 518, 486 S.E.2d at 88 (citations omitted). In fact, the *Moretz* Court used this analysis to hold that violation of the relevant statute in that case *did not* constitute unfair and deceptive trade practices. As plaintiff has failed to identify the regulation violated, and has made no argument concerning why any such violation should constitute unfair and deceptive trade practices, it has abandoned this argument. N.C. R. App. P., Rule 28(b)(6).

Plaintiff next argues that Walnut Grove committed unfair and deceptive trade practices because it breached a fiduciary duty owed to it through its actions related to the auction of the Stephens' herd. Unfortunately for plaintiff, there are no findings by the jury, nor stipulations by the parties, asserting that Walnut Grove owed plaintiff any fiduciary duty. Lacking such, it would have been error for the trial court to find unfair and deceptive trade practices on this basis.

Finally, plaintiff argues that all defendants should have been found to have committed unfair and deceptive trade practices, as they acted in concert to convert plaintiff's property. Although it is true that acts of conversion may constitute unfair and deceptive trade practices, *Love v. Pressley*, 34 N.C. App. 503, 239 S.E.2d 574 (1977), this determination must be made based upon the specific findings of the jury, along with any stipulations of the parties. Our review of the stipulations and jury findings in this case lead us to the conclusion that they do little more than support the claim for conversion, which already had been decided by directed verdict, and do not establish the additional egregious, immoral, oppressive, unscrupulous, or substantially injurious acts needed to impose the heightened penalty of unfair and deceptive trade practices. *Miller*, 126 N.C. App. at 518, 486 S.E.2d at 88. We affirm the trial court's denial of plaintiff's unfair and deceptive trade practices claim. These arguments are without merit.

**[3]** In plaintiff's sixth and final argument, it contends that the trial court erred in refusing to submit the issue of punitive damages to the jury. We disagree.

In the pre-trial conference, plaintiff stated its desire to include the issue of punitive damages in the trial, and defendants objected to the inclusion of that issue, arguing it had not been pled in either plaintiff's original or amended complaint. The trial court stated that it would conduct a bifurcated trial, and address the issue of punitive damages after the evidentiary portion of the trial, and before the damages portion. Upon reflection, the trial court offered to hear arguments and rule on the motion to amend at the pre-trial conference, but plaintiff responded:

> No, I'm not insistent that that be addressed now, because our evidence will not change throughout the course of the proceedings, and I think the Court will be better informed about the punitive damage element in this case at that time. So since it won't affect the jury's hearing, there's no need to address it at this point.

Defendants agreed that the issue would be best addressed after the evidentiary portion of the trial as well. The trial court further stated: "And then at that point in time, if you're eligible to have it, then we'll go ahead and hear your motion; and if I say I agree with you, then that will be the end of the case after the compensatory damages."

> Punitive damages are recoverable only in tort actions where there are allegations and proof of facts showing some aggravating factors surrounding the commission of the tort such as actual malice, oppression, gross and willful wrong, insult, indignity or a reckless or wanton disregard of plaintiff's rights. In order for a plaintiff to collect punitive damages there must be some additional element of asocial behavior which goes beyond the facts necessary to create a simple case of tort.

*Shugar v. Guill*, 51 N.C. App. 466, 469, 277 S.E.2d 126, 129, *modified and affirmed*, 304 N.C. 332, 283 S.E. 2d 507 (1981). One of the stated justifications for a trial court's denial of a plaintiff's motion to amend its complaint is futility of amendment. *Delta Envtl. Consultants, Inc. v. Wysong & Miles Co.*, 132 N.C. App. 160, 166, 510 S.E.2d 690, 694, *rev. denied*, 350 N.C. 379, 536 S.E.2d 70 (1999). Denial of a motion to amend is reviewed under an abuse of discretion standard, and the discretion of the trial court is given great deference. *North River Ins. Co. v. Young*, 117 N.C. App. 663, 670, 453 S.E.2d 205, 210 (1995).

Because plaintiff agreed to postpone hearing on its motion until after the evidentiary portion of the trial, it was within the discretion of the trial court to rule on the futility of amending the complaint to include the issue of punitive damages based upon the evidence presented, the findings of the jury, and the stipulations of the parties. We find no abuse of discretion in the trial court's denial of plaintiff's motion based upon this evidence, as we cannot hold that the trial court's failure to find the requisite aggravating factors necessary to support punitive damages as "manifestly unsupported by reason or . . . so arbitrary that it could not have been the result of a reasoned decision." ' " *Harris*, 184 N.C. App. at 607, 646 S.E.2d at 833.[2] This argument is without merit.

### Defendants' Appeal

[4] In defendants' first argument, they contend that the trial court erred in failing to grant their motions for summary judgment and judgment on the pleadings for the conversion claim on the grounds that they were not obligated to apply the proceeds of the sale of the collateral to senior security interests. We disagree.

As this Court recently explained,

[s]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. The party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact.

A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist.

*Wilkins v. Safran*, 185 N.C. App. 668, 671-72, 649 S.E.2d 658, 661 (2007). "Moreover, 'all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion.' The stand-

---

2. Although the trial court did not identify its reasons for denying the motion to amend, its ruling will be upheld as long as a valid reason therefore existed. *Wysong & Miles*, 132 N.C. App. at 166, 510 S.E.2d at 694.

ard of review for summary judgment is *de novo.*" *Forbis v. Neal,* 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (citations omitted).

Pursuant to North Carolina General Statutes, section 25-9-315, except as otherwise provided either in section 25-2-403(2) or in Article 9 of the Uniform Commercial Code as enacted in this State, "[a] security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien[.]" N.C. Gen. Stat. § 25-9-315(a)(1) (2001). Section 25-9-315(a) further provides that "[a] security interest attaches to any identifiable proceeds of collateral." N.C. Gen. Stat. § 25-9-315(a)(2) (2001). The term "proceeds" includes "[w]hatever is acquired upon the . . . disposition of collateral[,]" N.C. Gen. Stat. § 25-9-102 (64) (2001), and pursuant to section 25-9-315(c), "[a] security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected." N.C. Gen. Stat. § 25-9-315(c) (2001).

Section 25-9-315 "contains the general rule that a security interest survives disposition of the collateral. In these cases, the secured party may repossess the collateral from the transferee or, in an appropriate case, maintain an action for conversion." N.C. Gen. Stat. § 25-9-315, comment 2 (2001). "[C]onversion is defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Myers v. Catoe Constr. Co.,* 80 N.C. App. 692, 695, 343 S.E.2d 281, 283 (1986). "The essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner . . . and in consequence it is of no importance what subsequent application was made of the converted property, or that defendant derived no benefit from the act." *Lake Mary Ltd. P'ship. v. Johnston,* 145 N.C. App. 525, 532, 551 S.E.2d 546, 552, *rev. denied,* 354 N.C. 363, 557 S.E.2d 539 (2001) (quotation marks and citation omitted). "[T]he general rule is that there is no conversion until some act is done which is a denial or violation of the plaintiff's dominion over or rights in the property." *Id.* (internal quotation marks and citation omitted). Therefore, two essential elements are necessary in a claim for conversion: (1) ownership in the plaintiff, and (2) a wrongful conversion by the defendant. *See id.*

In the instant case, by proving that it possessed a perfected security interest in the collateral and resulting proceeds, plaintiff satisfied

its burden of demonstrating ownership. Plaintiff also established that the defendants engaged in the wrongful deprivation of plaintiff's ownership interest in the collateral and resulting proceeds. Defendants were notified by plaintiff of its senior security interest, yet continued with the auction in derogation of plaintiff's rights.

Defendants base their argument in part on the following statutory provision: "After default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." N.C. Gen. Stat. § 25-9-610(a) (2007). By the express terms of this provision, defendants could sell the Stephens' cattle only if 1) they proved they had a valid security interest in said cattle, and 2) they proved that the Stephens had defaulted in their obligations pursuant to that security interest.

Defendant Walnut Grove stipulated at trial that it had no security interest in the Stephens' cattle. Defendants Rocky Creek and Broker Dairy, through their presidents, testified at trial and by deposition that the Stephens were not in default on their security agreements. Therefore, defendants, through their own testimony and admissions, have provided facts which excluded them from a right to sell any part of the Stephens' Herd pursuant to Article 9, and specifically the provisions upon which they rely, sections 25-9-610 and 25-9-615. N.C. Gen. Stat. §§ 25-9-610(a) and 25-9-615(a) (2007).

Defendants argue that though they failed to provide plaintiffs with written notice of the auction, as required by North Carolina General Statutes, section 25-9-611, plaintiffs had actual notice, and therefore were barred from arguing the impropriety of the auction, or the disbursement of the proceeds. However, defendants had actual notice of plaintiff's claim of a superior security interest in the Stephens' herd before auction, through letters sent by plaintiff's attorney to defendants dated 21 October 2002. Plaintiff sent letters to defendant Walnut Grove, both prior to the auction and after, confirming conversations between plaintiff's counsel, Daniel C. Burton and Thomas W. Waldrep, Jr., and Lewis Harrison (Harrison), president of Walnut Grove, in which plaintiff informed Walnut Grove of its superior security interest in the Stephens' herd, stated that: "As you are aware, there are outstanding issues concerning the priority rights of various creditors, including [plaintiff], in the cattle to be sold at auction. Given that fact, you have stated that the proceeds of the auction sale will be held in escrow until such time as the priority rights of

creditors in the livestock can be fully determined." Harrison testified at trial he was made aware of plaintiff's claims of a superior security interest, and that he proceeded with the auction without attempting to determine the nature of plaintiff's security interest, and how it might pertain to the cattle sold at auction. He further testified that he was aware plaintiff had warned defendants not to disburse the proceeds from the auction without written agreement as to how to proceed, and that were defendants to do so, plaintiff would initiate a suit against them for conversion. Harrison testified that he did agree to hold the funds in escrow until proper distribution of the funds could be determined, and further admitted North Carolina law required him to do so. There is no doubt that Harrison was aware of the importance of holding the proceeds in escrow until priority rights could be determined, as Walnut Grove had been a named defendant in three prior lawsuits, and one complaint to the North Carolina Auctioneer Licensing Board for failing to pay proceeds to a party entitled to those funds. For this violation, the Licensing Board suspended Walnut Grove's auction license for two years.

The evidence clearly shows that plaintiff was defending its rights vigorously pursuant to its stated superior security interest in the Stephens' herd, both before and after the auction. *See* N.C. Gen. Stat. §§ 25-9-315 and comment 2; 25-9-322; 25-9-609 and comment 5; 25-9-610 comment 5. Even assuming *arguendo* that defendants had a right to auction the cattle pursuant to Article 9, and we hold that they did not, they may not claim any protection of a good faith justification for disbursing the proceeds among themselves. *See* N.C. Gen. Stat. § 25-9-615(g). The evidence shows that plaintiff made a decision to allow the auction to proceed instead of pursuing an injunction based upon the agreement pursuant to which the auction proceeds were to be held in escrow until the parties could agree upon proper disposition. This choice by plaintiff was in the interest of an expeditious and fair resolution of the dispute, potentially avoiding the costs and delay of trial for all parties, and we will not punish plaintiff for this reasonable course of action. In light of the unjustified manner in which defendants took possession of, and auctioned, the Stephens cattle, and in light of the fact that defendants did not adhere to the agreement to hold the proceeds in escrow pending final resolution, but disbursed the proceeds amongst themselves contrary to North Carolina law, we hold the trial court did not err in granting plaintiffs 21 December 2005 motion for summary judgment determining that defendants had converted the proceeds of the auction sale. We further hold that the trial court did not err in its 26 May 2006 judgment

in determining, as a matter of law, in favor of plaintiffs conversion claim. This argument is without merit.

In light of our holding in defendants' first argument, we need not address defendants' second argument.

**[5]** In defendants' third argument, they contend that the trial court erred in allowing plaintiff's motion to amend its complaint, because the motion to amend was done for the purpose of delay, and was futile. We disagree.

"[L]eave to amend should be freely given," and we review a trial court's ruling on a motion to amend pleadings for abuse of discretion. *Duncan v. Ammons Constr. Co.*, 87 N.C. App. 597, 599, 361 S.E.2d 906, 908 (1987). "An abuse of discretion will be found where a trial court's ruling 'is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 607, 646 S.E.2d 826, 833 (2007) (quotations and citations omitted). "Refusal to grant the motion without any justifying reason and without a showing of prejudice to defendant is considered an abuse of discretion." *Duncan*, 87 N.C. App. at 599, 361 S.E.2d at 908. Valid grounds for which a motion to amend may be denied include "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice and futility of the amendment." *Nationsbank of N.C., N.A. v. Baines*, 116 N.C. App. 263, 268, 447 S.E.2d 812, 815 (1994) (quotations and citation omitted).

Defendants make no argument in their brief supporting their assertion that the motion to amend was for the purpose of, or caused, undue delay. They further make no argument that they were prejudiced by any delay. Defendants do argue that the amended complaint was futile, because they "were entitled to foreclose on the Collateral and retain the proceeds." In light of our holding above, we hold that the trial court did not abuse its discretion in granting plaintiff's motion to amend. This argument is without merit.

**[6]** In defendants' fourth argument, they contend that the trial court erred in certain evidentiary admissions at trial. We disagree.

"A trial court's evidentiary rulings are subject to appellate review for an abuse of discretion, and will be reversed only upon a finding that the ruling was so arbitrary that it could not be the result of a reasoned decision." *Lord v. Customized Consulting Specialty, Inc.*, 182

N.C. App. 635, 644, 643 S.E.2d 28, 33-34, *disc. rev. denied*, 361 N.C. 694, 652 S.E.2d 647 (2007).

Defendants first argue that the trial court erred in denying their motion *in limine* to exclude any evidence relating to their refusal to place into escrow funds received from the sale of the Collateral. Defendant's motion was, in part, based upon the fact that the trial court previously had denied plaintiff's motion to compel defendants to escrow the proceeds. Therefore, defendants contend, the trial court not only allowed evidence of their decision not to escrow the proceeds through the trial, but also denied the opportunity to present evidence that such decision was lawful. We note that defendants do not direct this Court to the trial court's order denying plaintiff's motion to compel the escrow of the funds, and our review of the record fails to disclose that order. It is the defendants' duty to make sure the record contains all evidence relevant to its appeal, and its duty to direct this Court to that evidence in its brief. N.C. R. App. P., Rules 9 and 28(b)(6). Defendants contend that because a prior judge had denied plaintiff's motion to escrow the funds, the issue had been decided, and as a matter of law, defendants were allowed to disburse the proceeds in the manner they chose. Defendants direct this Court to no evidence that the denial of plaintiff's motion constituted a final disposition of that issue. It was a motion *in limine*. A motion *in limine* is interlocutory, and by its nature subject to being revisited by the trial court, as circumstances warrant. *See DOT v. Olinger*, 172 N.C. App. 848, 850, 616 S.E.2d 672, 674 (2005). Defendants further fail to cite any authority in their brief for their proposition, which is a violation of Rule 28(b)(6) of our Rules of Appellate Procedure. This violation subjects defendants argument to dismissal. In fact, the only legal citations in this argument are to Rules 402 and 403 of the North Carolina Rules of Evidence concerning relevant evidence and prejudice. Defendants argue evidence of their refusal to escrow the funds was irrelevant, based upon their argument, *supra*, that they were entitled pursuant to Article 9 to act as they did. As we have held against defendants on that issue, we hold against them on this issue as well. We further hold that the trial court's denial of defendants' motion to exclude any evidence that they failed to escrow the auction funds in violation of an agreement made between the parties was not an abuse of discretion, as that evidence was highly relevant to plaintiff's claims, and was not substantially outweighed by any prejudice to defendants. N.C. R. Evid., Rules 402 and 403.

**BARTLETT MILLING CO. v. WALNUT GROVE AUCTION & REALTY CO.**

[192 N.C. App. 74 (2008)]

**[7]** Defendants next argue that the trial court erred in excluding evidence that there was a reasonable basis for their retaining the auction proceeds, and in excluding defendants evidence of their offers to compromise or pay money to plaintiff. As defendants only argue error in the exclusion of this evidence based upon alleged prejudice concerning the unfair and deceptive trade practices claim against them, which the trial court dismissed as a matter of law, this argument is moot.

**[8]** Defendants next argue the trial court erred in allowing into evidence plaintiff's default judgment against the Stephens, which included an eighteen percent interest rate on monies owed. Defendants argue that the legal limit for interest on this kind of default was eight percent. The trial court reduced the pre-judgment rate from eighteen percent to eight percent, so there was no financial prejudice to defendants. They argue, however, that this evidence was irrelevant and unduly prejudicial, and could have misled the jury. They offer no evidence in support of how the admission of this evidence misled the jury, or prejudiced them in any way. This argument is without merit.

**[9]** In defendants' fifth argument, they contend the trial court erred in denying their motions for directed verdict on the grounds that the interest rate on the underlying secured debt owed plaintiff is unenforceable as a matter of law, and that plaintiff failed to establish any unfair or deceptive trade practice. We disagree.

As noted above, the trial court found no unfair or deceptive trade practice as a matter of law in its judgment. Defendants argue that the trial court should have directed a verdict enforcing a maximum of eight percent interest on the underlying pre-judgment secured debt owed plaintiffs. The actual pre-judgment interest applied to plaintiff's conversion award was eight percent. It is difficult to determine how defendants believe they have been prejudiced by either of these outcomes. In fact, as to the outcome of the unfair and deceptive trade practices issue, defendants stated at trial "we think the jury came to the right conclusion; and that the Court did as well . . . ." This argument is without merit.

**[10]** In defendants' sixth argument, they contend that the trial court erred by refusing to instruct the jury on the principle of marshaling. We disagree.

"The 'appealing party must show not only that error occurred in the jury instructions but also that such error was likely, in light of the

entire charge, to mislead the jury.' The trial court is 'required to instruct a jury on the law arising from the evidence presented.' " *Arndt v. First Union Nat'l Bank*, 170 N.C. App. 518, 525, 613 S.E.2d 274, 279 (2005) (citations omitted).

"As a general rule, before the doctrine of marshaling assets will be applied, there must be two funds or properties, at the time the equitable relief is sought, belonging to the common debtor of both creditors, on both of which funds one party has a claim or lien, and on one only of which the other party has a claim or lien." *Dixieland Realty Co. v. Wysor*, 272 N.C. 172, 181, 158 S.E.2d 7, 14 (1967) (quotations and citation omitted).

> The doctrine of marshaling applies only when it can be applied with justice to the paramount, or doubly secured, creditor, and without prejudicing or injuring him, or trenching on his rights. Such relief will not be given if it will hinder or impose hardships on the paramount creditor, or inconvenience him in the collection of his debt, or deprive him of his rights under his contract, by displacing or impairing a prior acquired lien or contract right; nor will it be given on any other terms than giving him complete satisfaction. The doctrine is never enforced where it will operate to suspend or put in peril the claim of the paramount creditor, or cause him risk of loss, or where the fund to be resorted to is one which may involve such creditor in litigation, especially if final satisfaction is somewhat uncertain, or where the effect of applying the doctrine would be to compel him to proceed by an independent action, such as one for the foreclosure of a mortgage, since that would place an additional burden on him. [T]he paramount creditor will not be compelled to collect his debt from the singly charged fund or property where such fund is of uncertain value, especially where long delay will necessarily ensue in converting it into money, or where that fund consists of property in the possession of third persons who claim title thereto, while the doubly charged fund is money in court.

*Dixieland Realty*, 272 N.C. at 181-82, 158 S.E.2d at 14 (quoting 55 C.J.S., Marshaling Assets and Securities, § 4, p. 962, quotations and citation omitted) (emphasis removed). "When equitable relief is sought, courts claim the power to grant, deny, limit, or shape that relief as a matter of discretion. This discretion is normally invoked by considering an equitable defense, such as unclean hands or laches, or by balancing equities, hardships, and the interests of the public and

of third persons." *Roberts v. Madison County Realtors Ass'n*, 344 N.C. 394, 399, 474 S.E.2d 783, 787 (1996); *see also Kennedy v. Kennedy*, 160 N.C. App. 1, 15, 584 S.E.2d 328, 337 (2003).

Defendants argue that because the Stephens' herd numbered between 600 and 700 at the time of auction, plaintiff was required to seek its relief from the cattle defendant did not sell at auction. However, marshaling is an equitable doctrine, and the trial court had discretion to grant or deny that relief based upon the facts before it. First, defendants fail to show that there were two separate sets of properties, where plaintiff had a security interest in both, but defendants had a security interest in only one. There was one Stephens' herd. Defendants, without consulting plaintiff, selected the best 300 head of cattle, making no attempt to determine if the cattle they selected were those sold by them to the Stephens, or the progeny or replacement for same. Defendants did not request the equitable doctrine of marshaling at this time. Defendants contend that plaintiff could have recovered its investment by selling the remaining cattle. However, in *voir dire*, defendants informed the trial court that the Stephens probably sold some of the remaining cattle, probably removed some cattle to Florida, and that "I think the evidence will not show where they all went. I think the evidence will be unclear as to that." Furthermore, there was a prior judgment in the case deciding as a matter of law that defendants had committed conversion by selling the 300 cattle at auction.

With these facts before the trial court, evidencing that defendants had not properly identified a separate property in which they held a security interest; that the location of the remaining cattle was unknown, and forcing plaintiff to attempt to recover its investment from those cattle would be burdensome, and potentially fruitless; and that in selling the 300 cattle, defendants were not acting with "clean hands", we hold the trial court did not abuse its discretion in denying the marshaling instruction, as it was not required under the facts of the case or the law. This argument is without merit.

[11] In defendants' seventh argument, they contend that the trial court erred by not awarding them costs, because the final judgment amount was less than an earlier proffered offer of judgment. We disagree.

Following the entry of judgment, defendants moved pursuant to Rules 59 and 68 of the North Carolina Rules of Civil Procedure for the trial court to amend its judgment and award defendants costs in

the action. Motions to amend pursuant to Rule 59 are matters within the discretion of the trial court. *Strickland v. Jacobs*, 88 N.C. App. 397, 399, 363 S.E.2d 229, 230 (1988). Rule 68(a) allows defendants to make an offer of judgment at any time more than ten days before the start of trial. If the offer of judgment is refused, and the final judgment at trial is less than the rejected offer, the offeree must pay the costs defendants incurred after submission of the offer. N.C. Gen. Stat. § 1A-1, Rule 68 (2007). Defendants properly submitted an offer of judgment to plaintiff in the amount of $52,660.74 before trial, which plaintiff rejected. Defendants argue that the final judgment was less than the offer of judgment, therefore the trial court was required to charge its post-offer costs to plaintiff. However, when we combine the judgment award of $44,232.88 with the costs awarded plaintiff, $11,776.05, as we are required to do, *Roberts v. Swain*, 353 N.C. 246, 538 S.E.2d 566 (2000), we reach a final judgment in favor of plaintiff in the amount of $56,008.93, which is more than the amount proffered in defendants offer of judgment. This argument is without merit.

Affirmed.

Chief Judge MARTIN and Judge ELMORE concur.