SUNTRUST BANK v. BRYANT/SUTPHIN PROPS., LLC

[222 N.C. App. 821 (2012)]

SUNTRUST BANK, Plaintiff v. BRYANT/SUTPHIN PROPERTIES, LLC, CALVERT R. BRYANT, JR. AND DONALD H. SUTPHIN, Defendants

No. COA12-131

(Filed 18 September 2012)

**1. Unfair Trade Practices—breach of contract—no egregious conduct**

The trial court erred by entering an award on defendant Bryant/Sutphin Properties' (BSP) N.C.G.S. §  75-1.1(a) claim. Defendants did not show any conduct upon which a Section 75-1.1(a) claim could stand except for a breach of contract claim. As the jury found that plaintiff had not breached the applicable contracts, defendants had no viable claim under Section 75-1.1(a).

**2. Contracts—breach—directed verdict denied—motion for new trial denied**

The trial court did not err by failing to enter a directed verdict in favor of plaintiff on the breach of contract claim and denying its motion for a new trial. A finding that one party did not breach a contract does not legally require a finding that the other party breached the same contract. Further, defendant's evidence showed that the cause of the "unpaid" note was plaintiff's own wrongdoing and/or that defendants were not actually in default.

**3. Unfair Trade Practices—judgment notwithstanding verdict granted**

The trial court did not err by granting judgment notwithstanding the verdict for plaintiff and setting aside the jury's verdict in favor of defendant Mr. Sutphin on the N.C.G.S. § 75-1.1(a) unfair trade practices claim.

**4. Contracts—no breach of contract—breach of covenant of good faith and fair dealing inapplicable**

The trial court did not err by granting judgment notwithstanding the verdict for plaintiff on defendant Mr. Sutphin's claim for breach of covenant of good faith and fair dealing. As the jury determined that plaintiff did not breach any of its contracts with defendants, it would be illogical to conclude that plaintiff somehow breached implied terms of the same contracts.

**5. Attorney Fees—unfair trade practices—did not prevail on claim**

> The trial court did not err by refusing to award attorney fees to defendants under N.C.G.S. § 75-16.1. Defendant BSP did not prevail in its Section 75-1.1(a) claim.

Appeal by plaintiff and defendants Bryant/Sutphin Properties, LLC and Donald H. Sutphin from order entered 25 July 2011, judgment entered 25 August 2011, order entered 2 September 2011, and order entered 17 October 2011 by Judge Lindsay R. Davis, Jr. in Superior Court, Forsyth County. Heard in the Court of Appeals 16 August 2012.

> *Bell, Davis & Pitt, P.A., by William K. Davis, Kevin G. Williams, and Andrew A. Freeman, for plaintiff- appellant/ cross-appellee.*
>
> *Boydoh & Hale, PLLC, by J. Scott Hale and Robert E. Boydoh, Jr., for defendants-cross-appellants/appellees.*
>
> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Robert A. Singer, J. Benjamin Davis, and Mary F. Pena, for amicus curiae.*

STROUD, Judge.

Plaintiff and defendants Bryant/Sutphin Properties, LLC and Donald H. Sutphin appeal. For the following reasons, we reverse the trial court's entry of an award for unfair or deceptive practice to Bryant/Sutphin Properties, LLC and affirm the trial court on all other issues raised by the parties.

## I. Background

Plaintiff and defendant Bryant/Sutphin Properties, LLC ("BSP") entered into a Commercial Note ("Note") whereby plaintiff would provide defendant BSP funds to finance a real estate development project; defendant Sutphin was a guarantor on the Note. Plaintiff sued defendants BSP and Sutphin[1] (collectively "defendants") for a claim it entitled as "Suit on Note" which was essentially a breach of contract claim based upon defendants' alleged failure to pay the Note in accordance with its terms. Defendants answered plaintiff's complaint and counterclaimed based upon various alleged wrongs plain-

---

1. Defendant Calvert R. Bryant, Jr. is not a party to this appeal, and therefore will not be discussed.

SUNTRUST BANK v. BRYANT/SUTPHIN PROPS., LLC

[222 N.C. App. 821 (2012)]

tiff had committed; according to defendants, the allegedly wrongful conduct taken by plaintiff centered upon plaintiff's action of placing a hold on defendant Sutphin's accounts ("Sutphin Accounts") "so that no funds could be withdrawn from such Accounts." Defendants alleged that plaintiff was aware that the Accounts "constituted the primary source of funds needed to conduct the day-to-day business operations of Bryant/Sutphin Properties, including, but not limited to, the development of the Condominium Project, and to conduct day-to-day business operations of other businesses owned, either [i]n whole or in part, by Don Sutphin." Defendants sued for improper setoff, conversion, wrongful dishonor of item, breach of covenant of good faith and fair dealing, punitive damages, and unfair/deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1. ("Section 75-1.1(a)").[2]

After the filing of the initial pleadings, the parties engaged in various legal filings which resulted in a 472 page record and a box of exhibits which includes, *inter alia*, a reply to defendants' counterclaims, a motion for summary judgment, a motion to dismiss and objections to the motion for summary judgment, a jury verdict, two motions for judgment notwithstanding the verdict, a motion for a new trial, a motion to tax costs, two notices of appeal, an undertaking to stay execution on appeal, a special motion to docket entry of the stay, an exception to undertaking to stay execution on appeal, and the various orders and judgment of the trial court ruling on the parties' aforementioned motions.

Ultimately, the jury found in favor of defendants as to the factual basis for their claims under Section 75-1.1(a) although it also found no breach of contract by either plaintiff or defendants. The trial court set aside the Section 75-1.1(a) verdict for defendant Sutphin, leaving only the Section 75-1.1(a) verdict for defendant BSP. Defendant BSP was awarded $700,000.00 from plaintiff on its Section 75-1.1(a) claim, and these damages were trebled to $2,100,000.00; plaintiff was also ordered to pay costs of $5,612.90. All of the parties appealed.

II.  Plaintiff's Appeal

Plaintiff argues that the trial court erred in entering an award on defendant BSP's Section 75-1.1(a) claim and in failing to enter a directed verdict on its claim for breach of contract.

---

2. We note that though defendants entitle their counterclaim "Unfair/Deceptive Trade Practices" the word "trade" does not actually appear in N.C. Gen. Stat. § 75-1.1. *See* N.C. Gen. Stat. § 75-1.1 (2009). We will therefore refer to defendants' counterclaim as a "Section 75-1.1(a)" claim.

A.  Defendant BSP's Claim for Section 75-1.1(a)

**[1]**  The verdict sheet presented 22 issues to the jury, addressing the various claims raised by all of the parties. There is no issue raised on appeal as to the propriety of the verdict sheet or jury instructions. The issues and verdicts as to the relevant questions for purposes of defendant BSP's Section 75-1.1(a) claim read, in pertinent part:

> 7. Did [plaintiff] breach the Central Carolina Bank Deposit Agreement related to [defendant] Donald H. Sutphin's money market account?
>
> Answer: NO
>
> . . . .
>
> 12. Did [plaintiff] breach the contract with [defendant] Bryant/Sutphin Properties, LLC for the making and repayment of the loan for the acquisition and development of the property known as Ashley Terrace?
>
> Answer: NO
>
> . . . .

17.  Did [plaintiff] do at least one of the following?

a)   Did [plaintiff] place the hold on [defendant] Donald H. Sutphin's money market account without any prior notice?

Answer: yes

b)   Did [plaintiff] fail to make written demand for payment in full of the two D.H. Sutphin Builders' demand notes before placing the hold on [defendant] Mr. Sutphin's account?

Answer: yes

c)   Did [plaintiff] fail to make written demand for payment in full of the Bryant/Sutphin Properties, LLC loan before placing the hold on [defendant] Mr. Sutphin's account?

Answer: yes

d)   Did [plaintiff] change the prior manner in which it had been dealing with Defendants by placing the hold on [defendant] Mr. Sutphin's account?

Answer: yes

. . . .

18. Was [plaintiff]'s conduct as found in Issue 17 in commerce or did it affect commerce?

Answer: yes

. . . .

20. Was [plaintiff]'s conduct as found in Issue 17 a proximate cause of economic injury to [defendant] Bryant/Sutphin Properties, LLC?

Answer: yes

. . . .

22. In what amount has [defendant] Bryant/Sutphin Properties, LLC been injured by [plaintiff]'s conduct as found in Issue 17?

Answer: $700,000

On 25 July 2011, the trial court entered an order determining that "[t]he conduct found by the jury is determined to constitute an unfair trade practice in violation of N.C.G.S. § 75-1.1, and the damages in the amount of $700,000.00 shall be trebled pursuant to N.C.G.S. § 75-16." On 25 August 2011, the trial court entered a judgment concluding "that the conduct found by the jury constitutes an unfair trade practice in violation of N.C. Gen. Stat. § 75-1.1. Pursuant to N.C. Gen. Stat. § 75-16, the damages that the jury found Bryant/Sutphin Properties, LLC incurred in the amount of $700,000.00 will be trebled." Plaintiff contends that the trial court "erred in concluding that [plaintiff] committed [a Section 75-1.1(a) violation] after the jury found that [plaintiff] did not breach its contracts with Defendants. Without a breach, the [Section 75-1.1(a)] counterclaim should have necessarily failed."

1. Standard of Review

"Although it is a question of fact whether the defendant performed the alleged acts, it is a question of law whether those facts constitute an unfair or deceptive trade practice." *RD&J Props. v. Lauralea–Dilton Enters., LLC*, 165 N.C. App. 737, 748, 600 S.E.2d 492, 501. "Whether a commercial act or practice violates G.S. § 75-1.1 is a question of law. Moreover, whether an action is unfair or deceptive is dependent upon the facts of each case and its impact on the market-

place." *Norman Owen Trucking v. Morkoski*, 131 N.C. App. 168, 177, 506 S.E.2d 267, 273 (1998) (citations and quotation marks omitted). "For questions of law, we apply *de novo* review." *In re G.B.R.*, _____ N.C. App. _____, _____, 725 S.E.2d 387, 389 (2012).

2.  Law on Section 75-1.1(a)

N.C. Gen. Stat. § 75-1.1(a) provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a).

> The elements of a claim for unfair or deceptive trade practices in violation of N.C. Gen. Stat. § 75–1.1 . . . are: (1) an unfair or deceptive act or practice or an unfair method of competition; (2) in or affecting commerce; (3) that proximately causes actual injury to the plaintiff or to his business.

*RD&J Props.*, 165 N.C. App. at 748, 600 S.E.2d at 500 (citation omitted). "Under G.S. 75-1.1, an act or practice is unfair if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. An act or practice is deceptive if it has the capacity or tendency to deceive." *Ace Chemical Corp. v. DSI Transports, Inc.*, 115 N.C. App. 237, 247, 446 S.E.2d 100, 106 (1994) (citations and quotation marks omitted). Furthermore,

> actions for unfair or deceptive trade practices are distinct from actions for breach of contract, and a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75–1.1. Substantial aggravating circumstances must attend the breach in order to recover under the Act. A violation of Chapter 75 is unlikely to occur during the course of contractual performance, as these types of claims are best resolved by simply determining whether the parties properly fulfilled their contractual duties.

*Mitchell v. Linville*, 148 N.C. App. 71, 75, 557 S.E.2d 620, 623-24 (2001) (citations, quotation marks, ellipses, and brackets omitted).

3.  Analysis

In this case, there are two ways in which defendants could have proven and prevailed on a Section 75-1.1(a) claim: (1) a Section 75-1.1(a) claim standing separate and apart from a breach of contract claim or (2) a Section 75-1.1(a) claim based upon a breach of contract accompanied by "[s]ubstantial aggravating circumstances[.]" *Id.*

a.  Section 75-1.1(a) Claim Standing Alone

The first way in which defendants could have prevailed on a Section 75-1.1(a) claim is by showing a Section 75-1.1(a) violation separate and apart from a breach of contract; indeed, this is the route defendants have chosen as they contend that "freezing of the Sutphin Account was outside the scope of both the CCB Deposit Agreement and the loan documents." Defendants argue that "regardless of whether [plaintiff]'s conduct violated or complied with any contractual provision, [plaintiff]'s conduct was immoral, unethical, oppressive, unscrupulous, and destroyed Defendants' business in violation of Chapter 75." However, despite the numerous adjectives used by defendants to describe plaintiff's alleged conduct, none of the allegations in defendants' counterclaims support defendants' claim that plaintiff has committed a Section 75-1.1(a) violation. Defendants make no allegations or claims for fraud, constructive fraud, misrepresentation or the like on the part of plaintiff. While we recognize that "[t]o prevail on a Chapter 75 claim, a [party] need not show fraud, bad faith, or actual deception[,]" [the party] must show "that a defendant's acts possessed the tendency or capacity to mislead or created the likelihood of deception." *RD&J Properties*, 165 N.C. App. at 748, 600 S.E.2d at 500-01. Beyond repeatedly stating that plaintiff did not have a right to place holds on the Sutphin Accounts, defendants have not alleged any conduct which demonstrates "the tendency or capacity to mislead or [to] create[] the likelihood of deception." *Id.* at 748, 600 S.E.2d at 501.

Issue 17 addressed the possible bases for defendants' Section 75-1.1(a) claim. The jury's answers to issue 17 indicate that the jury found that plaintiff (1) placed "the hold on [defendant] Donald H. Sutphin's money market account without any prior notice[;]" (2) failed "to make written demand for payment in full of the two D.H. Sutphin Builders' demand notes before placing the hold on [defendant] Mr. Sutphin's account[;]" (3) failed "to make written demand for payment in full of the Bryant/Sutphin Properties, LLC loan before placing the hold on [defendant] Mr. Sutphin's account[;]" and (4) changed "the prior manner in which it had been dealing with Defendants by placing the hold on [defendant] Mr. Sutphin's account[.]" Yet the fact that plaintiff committed any of these four acts will not support a Section 75-1.1(a) claim if plaintiff had the right to do these acts under the contracts between plaintiff and defendants. Defendants argue that these actions are outside of the *scope* of the contracts, including the CCB Deposit Agreement and loan docu-

ments, but in actuality, defendants are claiming that plaintiff acted outside of its *authority* under these contracts: this *is* a breach of contract.

For example, even if we were to assume that the contracts required plaintiff "to make a written demand for payment in full of the two D.H. Sutphin Builders' demand notes before placing the hold on [defendant] Mr. Supthin's account[,]" the failure to make written demand for payment in full would simply be a breach of the contracts; yet the jury found that plaintiff had not breached any contract with defendants, implicitly finding that plaintiff had the contractual right to place the hold on the account without giving a prior written demand for payment in full. The same applies to the other three actions by plaintiff. There is no doubt that plaintiff's placing a hold on the Sutphin Accounts without prior notice, failing to make written demands for payment, and acting in a different manner than plaintiff had in the past would be surprising to defendants and likely disruptive to defendants' business(es); while we agree that this disruption may have been the straw that broke the camel's back and caused the collapse of defendants' business(es), this does not make plaintiff's actions "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" or accurately described as having "the capacity or tendency to deceive." *Ace Chemical Corp.*, 115 N.C. App. at 247, 446 S.E.2d at 106. Thus, the unfairness or deceptiveness upon which defendants must rely, *see RD&J Properties*, 165 N.C. App. at 748, 600 S.E.2d at 500-01, is a contractual issue despite defendants' contentions otherwise.

b. Section 75-1.1(a) Based Upon Breach of Contract

The second way in which defendants could have demonstrated a valid claim for Section 75-1.1(a) is by showing a breach of contract accompanied by "[s]ubstantial aggravating circumstances[.] *Mitchell*, 148 N.C. App. at 75, 557 S.E.2d at 623-24. However, here, the jury concluded that plaintiff had not "breach[ed] the Central Carolina Bank Deposit Agreement related to [defendant] Donald H. Sutphin's money market account[,]" and plaintiff had not "breach[ed] the contract with [defendant] Bryant/Sutphin Properties, LLC for the making and repayment of the loan for the acquisition and development of the property known as Ashley Terrace[.]" On appeal, none of the parties contest that the basis of plaintiff's relationship with defendants was contractual or that the Central Carolina Bank Deposit Agreement ("CCB Agreement") and "the loan for the acquisition and development of the property known as Ashley Terrace" ("Ashley Terrace Loan") are the applicable contracts which were properly submitted to

the jury on the question of breach. Thus, while the parties may disagree about whether any contractual provision within the CCB Agreement or the Ashley Terrace Loan allowed plaintiff to place the hold on defendant Sutphin's Accounts, the jury has already determined plaintiff has not breached any such provision within either of these controlling documents. Accordingly, defendants do not have a viable Section 75-1.1(a) claim via a claim for breach of contract.

c.  Jury Verdict Regarding Section 75-1.1(a)

Because defendants failed to plead in their counterclaims or demonstrate during trial any facts which would allow for a Section 75-1.1(a) claim outside of the context of a breach of contract claim, the trial court was left with three possible determinations as to BSP's counterclaims for breach of contract and Section 75-1.1(a): (1) The jury could have found that plaintiff neither breached a contract nor committed any acts which would constitute a Section 75-1.1(a) violation against BSP. In this situation, the trial court would not award any damages to BSP. (2) The jury could have found that although plaintiff had breached a contract there were not facts constituting a Section 75-1.1(a) violation against BSP. In this situation, the trial court would award damages based upon breach of contract but not upon a Section 75-1.1(a) violation against BSP. (3) The jury could have found that plaintiff breached a contract and there were facts constituting a Section 75-1.1(a) violation against BSP. In this situation, the trial court would award damages based upon breach of contract and would then have "determine[d] as a matter of law whether" the jury's positive responses to issue 17 regarding the "[s]ubstantial aggravating circumstances" supported an award for a Section 75-1.1(a) violation. *Id.; McDonald v. Scarboro*, 91 N.C. App. 13, 18, 370 S.E.2d 680, 684 ("Based upon the jury's findings of fact, the court must determine as a matter of law whether a defendant's conduct violates [Section 75-1.1(a)]."), *disc. review denied*, 323 N.C. 476, 373 S.E.2d 864 (1988). In other words, BSP would have been awarded damages based upon breach of contract and may have been awarded damages based upon the trial court's determination regarding a Section 75-1.1(a) violation. However, another scenario which should not have happened is what actually did occur.

Here, the jury found that plaintiff had *not* breached a contract but there were facts sufficient to constitute a Section 75-1.1(a) violation; hence, the jury's negative responses to issues 7 and 12 regarding breach of contract and its positive responses to issue 17 regarding other conduct on the part of plaintiff. In other words, the jury found

that although there was not a breach of contract there were "[s]ubstantial aggravating circumstances" that took place. *Mitchell*, 148 N.C. App. at 75, 557 S.E.2d at 623-24. While this was a logical conclusion for the jury to make, as they could properly find that a breach of contract had not taken place and that plaintiff had committed the acts listed in issue 17, it was error for the trial court to determine as a matter of law that these acts constituted a Section 75-1.1(a) violation where the only acts alleged were "[s]ubstantial aggravating circumstances" to a breach of contract when there was *no* breach of contract. *Id.* Without an independent Section 75-1.1(a) claim based upon some conduct outside the scope of the contracts, an award for a Section 75-1.1(a) claim could be entered only if the jury found a breach of contract accompanied by "[s]ubstantial aggravating circumstances." *Id.* As the jury did not find a breach of contract, the inquiry should have ended because there was no breach of contract. *Id.*

4. Conclusion

In summary, defendants have not shown any conduct upon which a Section 75-1.1(a) claim could stand except for a breach of contract claim. As the jury found that plaintiff had not breached the applicable contracts, defendants have no viable claim under Section 75-1.1(a). Accordingly, the trial court erred in entering an award on defendant BSP's claim for Section 75-1.1(a). As we have concluded that the trial court erred in entering an award for Section 75-1.1(a) to defendant BSP, we need not address plaintiff's other issues regarding defendant BSP's Section 75-1.1(a) claim.

B. Plaintiff's Claim for Breach of Contract

[2] During trial, pursuant to Rule 50, plaintiff requested a directed verdict as to its claim for breach of contract against defendants. After the jury verdict finding no breach of contract on the part of defendants, pursuant to Rule 59, plaintiff moved for a new trial. The trial court denied both of plaintiff's requests.

1. Directed Verdict

Plaintiff contends that "[t]he [t]rial [c]ourt [e]rred in [d]enying [its] Rule 50 [m]otions on its [b]reach of [c]ontract [c]laims" arguing that "[i]t is undisputed that Defendants haven't made the payments under the BSP Note and Sutphin/BSP Guaranty."

The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury. In

determining the sufficiency of the evidence to withstand a motion for a directed verdict, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, giving the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom and resolving contradictions, conflicts, and inconsistencies in the non-movant's favor.

*Rink & Robinson v. Catawba Valley Ent.*, _____ N.C. App. _____, _____, 725 S.E.2d 426, 429 (2012) (citations and quotation marks omitted).

"A party to an executory contract is under a duty not to do anything to prevent the other party to the contract from performing. When he does something that prevents the other party from performing, he is liable in damages." *Pedwell v. First Union Natl. Bank*, 51 N.C. App. 236, 238, 275 S.E.2d 565, 567 (1981). Defendant Sutphin testified that he could have continued to make loan payments with the funds in the Sutphin Accounts, but once the Sutphin Accounts were wrongfully placed on hold it took all of his "working capital." Furthermore, defendants denied actually being in default on the Note at the time the hold was placed. Defendant's evidence, taken as true, *see Rink & Robinson*, _____ N.C. App. at _____, 725 S.E.2d at 429, tends to show that any "breach" of contract on the part of defendants was due to plaintiff's hold placed on the Sutphin Accounts.

Plaintiff claims it had a right to place the hold, so its actions in placing the hold were not wrongful. However, our standard of review requires us to take "all of the evidence which supports the non-movant's claim . . . as true" and to consider it "in the light most favorable to the non-movant, giving the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom and resolving contradictions, conflicts, and inconsistencies in the non-movant's favor." *Id.* Therefore, though this case is rife with "contradictions, conflicts, and inconsistencies[,]" we must resolve these in defendants' favor. *Id.*

In addition, in the criminal context our Supreme Court has stated,

In North Carolina jurisprudence, a distinction is drawn between verdicts that are merely inconsistent and those which are legally inconsistent and contradictory. It is firmly established that when there is sufficient evidence to support a verdict, mere inconsistency will not invalidate the verdict.

However, when a verdict is inconsistent and contradictory, a defendant is entitled to relief.

*State v. Mumford*, 364 N.C. 394, 398, 699 S.E.2d 911, 914 (2010) (citations and quotation marks omitted).

While the jury's verdicts on plaintiff's claim and defendants' counterclaims may be factually inconsistent, they are not "legally inconsistent and contradictory[,]" *id.*, as a finding that one party did not breach a contract does not legally require a finding that the other party breached the same contract; nor does a finding that a party breached a contract legally require a finding that the other party did not breach said contract. Legally, both parties could breach the same contract, neither could breach the contract, or either party alone could breach the contract. Accordingly, plaintiff was not entitled to a directed verdict. *See Pedwell*, 51 N.C. App. at 238, 275 S.E.2d at 567.

2. New Trial

Plaintiff argues that "the trial court erred in denying [its] motion for a new trial" as to its breach of contract claim. (Original in all caps.) Plaintiff contends that "[a]ll of the evidence showed that the BSP Note was due and unpaid[,]" and therefore it is entitled to a new trial because "[t]he jury's verdict on [its] breach of contract claims ignored the evidence[.]"

Generally . . . the trial court's decision on a motion for a new trial under Rule 59 will not be disturbed on appeal, absent an abuse of discretion. . . . However, where the Rule 59 motion involves a question of law or legal inference, our standard of review is *de novo*.

*Bodie Island Beach Club Ass'n, Inc. v. Wray*, _____ N.C. App. _____, _____, 716 S.E.2d 67, 76-77 (2011) (citations, quotation marks, and brackets omitted). As discussed above, defendant's evidence showed that the cause of the "unpaid" Note was plaintiff's own wrongdoing and/or that defendants were not actually in default; presumably the jury believed this evidence as it concluded that defendants had not breached the contract. *See Pedwell*, 51 N.C. App. at 238, 275 S.E.2d at 567. Therefore, the trial court did not err in denying defendant's motion for a new trial.

III. Defendants' Appeal

A. Judgment Notwithstanding the Verdict

Plaintiff and defendants made motions for judgment notwithstanding the verdict ("JNOV"); the trial court granted plaintiff's

motion as to the jury's award to defendant Sutphin on his claim for Section 75-1.1(a) and denied defendants' motion as to its claim for breach of covenant of good faith and fair dealing.

1. Defendant Sutphin's Claim for Section 75-1.1(a)

[3] Defendants first contend that "the trial court erred by granting JNOV for [plaintiff] and setting aside the jury's verdict in favor of Mr. Sutphin." (Original in all caps.) As we have already concluded, the trial court should not have entered an award for a Section 75-1:1(a) violation for defendant BSP. Based on this same reasoning, we conclude the trial court did not err in granting plaintiff's motion for JNOV as to defendant Sutphin's claim for Section 75-1.1(a). We need not address defendants' argument regarding the evidence allowed regarding damages for defendant Sutphin's Section 75-1.1(a) claim as we have already determined an award could not stand in this case without a breach of contract.

2. Defendants' Claim for Breach of Covenant of Good Faith and Fair Dealing

[4] Defendants next contend that "the trial court erred by denying defendants' motion for JNOV on their good faith claims." (Original in all caps.) As the jury determined that plaintiff did not breach any of its contracts with defendants, it would be illogical for this Court to conclude that plaintiff somehow breached implied terms of the same contracts. *See generally Bicycle Transit Authority v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985) ("In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." (citation and quotation marks omitted)). Accordingly, the trial court did not err in denying defendants' motion for JNOV as to defendants' "good faith claims."

B. Attorneys' Fees

[5] Lastly, defendants moved for attorneys' fees; the trial court denied the request. Defendants contend that "the trial court erred by refusing to award defendants their attorneys fees pursuant to N.C.G.S. § 75-16.1." (Original in all caps.) Defendants' entire argument is contingent upon the fact that defendant BSP prevailed in its claim for Section 75-1.1(a). However, as we have concluded that the trial court erred in entering an award for Section 75-1.1(a), this argument must necessarily fail. Therefore, we conclude that the trial court did not err in "refusing to award defendants their attorneys fees[.]"

TRADEWINDS AIRLINES, INC. v. C-S AVIATION SERVS.

[222 N.C. App. 834 (2012)]

IV.  Conclusion

For the foregoing reasons, we reverse the trial court's entry of an award for defendant BSP's claim for Section 75-1.1(a). As to all of the parties other issues, we affirm.

REVERSED in part; AFFIRMED in part.

Judges CALABRIA and STEELMAN concur.