Wining Taylors, LLC v. CE Precision, Inc., 2019 NCBC 25.

STATE OF NORTH CAROLINA

WAKE COUNTY

WINING TAYLORS, LLC,

          Plaintiff,

v.

CE PRECISION, INC. and YUAN WANG,

          Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 7150

**ORDER AND OPINION ON
PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

1.    Plaintiff Wining Taylors, LLC makes and sells a device, named "the Durand," for extracting stops or corks from wine bottles. Wining Taylors retained Defendants Yuan Wang and CE Precision, Inc. to make component parts for the Durand. According to Wining Taylors, Defendants failed to produce acceptable parts, wrongfully refused to return confidential materials and equipment, and then helped counterfeiters make knock-off versions of the Durand.

2.    Wining Taylors now moves for partial summary judgment under Rule 56 of the North Carolina Rules of Civil Procedure on its claims for breach of contract, conversion, trademark infringement, and unfair or deceptive trade practices. For the reasons stated below, the Court **GRANTS** the motion in part and **DENIES** it in part.

> *Blanco Tackabery & Matamoros, P.A., by Peter J. Juran, for Plaintiff Wining Taylors, LLC.*
>
> *Law Office of Fiona Wang, PLLC, by Xiaoyang Wang, for Defendants Yuan Wang and CE Precision, Inc.*

Conrad, Judge.

# I.
# BACKGROUND

3. The Court does not make findings of fact in ruling on motions for summary judgment. The following background, describing the evidence and noting relevant disputes, is therefore intended only to provide context for the Court's analysis and ruling.

4. It is unclear when Wining Taylors first developed and introduced the Durand, but the device appears to have enjoyed some success. Wining Taylors states that it holds patent and trademark rights, both domestic and foreign, covering the Durand. (Aff. of Ken Vanker ¶ 3, ECF No. 36 ["Vanker Aff."].) The company markets the device widely, including overseas. (Vanker Aff. ¶ 4.)

5. The Durand has five component parts: a handle, a retainer, a twin blade, a stabilizer, and a corkscrew. (*See* Vanker Aff. ¶¶ 12, 19.) Wining Taylors does not make these component parts itself. A representative of Wining Taylors, Ken Vanker, was familiar with Defendants and believed that they could produce the needed parts at a reasonable cost through manufacturing contacts in China. (*See* Vanker Aff. ¶ 5.) Wining Taylors retained Defendants to make the component parts and were ultimately pleased with the first round of production. (*See* Vanker Aff. ¶ 7.)

6. In 2015, Wining Taylors needed a new supply of parts. (Vanker Aff. ¶ 8.) E-mail correspondence between Vanker and Wang shows that Wining Taylors entertained several bids. (*See* Aff. of Yuan Wang Ex. 2, ECF No. 43 ["Wang Aff."].) Wining Taylors eventually accepted Defendants' bid in June 2015. (*See* Vanker Aff. ¶¶ 12, 13; Wang Aff. ¶ 9.)

7. There is no formal purchase order memorializing the parties' agreement, but certain terms are clearly set out in the relevant e-mail correspondence. (*See* Wang Aff. ¶ 10.) It is undisputed, for example, that Wining Taylors ordered a total of 20,000 kits based on a price of $4.313 for each kit of five component parts. (*See* Vanker Aff. ¶¶ 12, 13; Wang Aff. ¶ 9.) It is also undisputed that Wining Taylors paid a deposit of $34,504 for the cost of the first 8,000 kits. (*See* Vanker Aff. ¶ 14, Ex. 4.)

8. The record is less clear as to other terms of the agreement. It appears that, before beginning production, Defendants informed Wining Taylors that the mold inserts and dies used in the first round of production were worn out and needed to be replaced. (*See* Vanker Aff. ¶¶ 9, 10; Wang Aff. ¶ 13.) According to Vanker, Defendants agreed to absorb the cost of the mold inserts, and Wining Taylors agreed to pay for new dies for the steel blade parts. (*See* Vanker Aff. ¶ 10.) Wang, on the other hand, states that there was no agreement as to who would pay for the mold inserts. (*See* Wang Aff. ¶ 12.) It is also unclear how the parties intended to allocate the cost of related tooling. (*See* Wang Aff. ¶¶ 13, 14.)

9. Several months went by. Defendants began producing the component parts and, in November 2015, sent photographs of samples to Wining Taylors. (*See* Vanker Aff. ¶ 18; Wang Aff. ¶ 19.) In Vanker's words, the parts "were not cleaned-up or polished or plated," making it "impossible" to determine whether they were of suitable quality. (Vanker Aff. ¶ 18.) Wang responded at the time that the Chinese company responsible for cleaning and polishing the parts had gone out of business, forcing Defendants to seek a new vendor. (*See* Vanker Aff. ¶ 18; Wang Aff. ¶ 23.) The

following February, Wining Taylors requested samples of all parts and instructed Defendants not to proceed with production without explicit approval. (*See* Vanker Aff. ¶ 19, Ex. 8; Wang Aff. ¶ 22, Ex. 10.) Wang replied with one word: "Noted." (Vanker Aff. Ex. 9.)

10. When Wining Taylors received the samples in May 2016, it found them unacceptable and rejected them. (Vanker Aff. ¶ 20; *see also* Vanker Aff. Ex. 10.) Vanker informed Wang that the parts had "poor die cast finishing" and that "you have lost our business." (Vanker Aff. Ex. 10; Wang Aff. ¶ 23.) By that point, Defendants had produced 2,000 kits. Vanker demanded that Defendants ship those kits to Wining Taylors, along with all molds, dies, specifications, and related equipment. (*See* Vanker Aff. ¶ 23.) Vanker also demanded a refund of most of Wining Taylors's deposit. (*See* Vanker Aff. ¶ 23.)

11. The cancellation of the order prompted months of negotiation. In July 2016, Wang attempted to regain the business of Wining Taylors with new parts that he described as "perfect." (Vanker Aff. ¶ 26; Wang Aff. Ex. 12.) Vanker replied that it was too late and then, in August 2016, reiterated his demand for a return of Wining Taylors's property and for a refund of its deposit, excluding the cost of the 2,000 completed kits. (Vanker Aff. ¶ 26; *see* Vanker Aff. Exs. 12, 13, 14, 16.) Wang acknowledged that some refund was needed and that he intended to return all component parts and other materials. (Vanker Aff. Ex. 17.) Not long after, though, Wang announced that he intended to keep certain new tooling and that "[s]omeone in China would like to buy it." (Vanker Aff. Ex. 23.) As late as April 2017, Wang

continued to haggle over the amount of any refund that would be due, suggesting that he was continuing to make additional parts and would deduct that cost from the deposit. (*See* Vanker Aff. ¶ 25.)

12. According to Wining Taylors, Wang carried out his threat to sell its property to others, resulting in counterfeit versions of the Durand being sold in China and on the internet. (*See* Vanker Aff. ¶ 36.) Wining Taylors has submitted evidence to show that Chinese authorities have found and confiscated thousands of knock-off devices, at least some of which were falsely marked with designations of patents and trademarks owned by Wining Taylors. (*See* Vanker Aff. ¶ 38; *see also* Aff. of Gwen Kui, ECF No. 37 ["Kui Aff."].) Wang denies playing any role in the alleged counterfeiting. (*See* Wang Aff. ¶¶ 30–33.)

13. Wining Taylors filed this action in June 2017. The complaint when filed included claims for breach of contract, accounting, conversion, patent infringement, trademark infringement, and unfair or deceptive trade practices under N.C. Gen. Stat. § 75-1.1. The complaint also included a remedial claim for injunctive relief. Wining Taylors later voluntarily dismissed the claim for patent infringement. (*See* ECF No. 13.)

14. Discovery is complete, and Wining Taylors has moved for offensive summary judgment on four of its claims for relief. The motion has been fully briefed, and the Court held a hearing on January 22, 2019, at which all parties were represented by counsel.[1] The motion is ripe for determination.

---

[1] Defendants' counsel has since been granted leave to withdraw. (*See* ECF Nos. 48, 51.) At the time of the motion for withdrawal, Wang sent multiple e-mails to the Court, some of

## II.
## ANALYSIS

15.     Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c).  In deciding a motion for summary judgment, the Court views the evidence "in the light most favorable to the nonmov[ant]," taking the nonmovant's evidence as true and drawing inferences in its favor.  *Furr v. K-Mart Corp.*, 142 N.C. App. 325, 327, 543 S.E.2d 166, 168 (2001) (internal citation and quotation marks omitted).  The moving party "bears the initial burden of demonstrating the absence of a genuine issue of material fact."  *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002) (citation omitted).

16.     "Where, as here, the party with the burden of proof moves for summary judgment, a greater burden must be met."  *Brooks v. Mt. Airy Rainbow Farms Ctr., Inc.*, 48 N.C. App. 726, 728, 269 S.E.2d 704, 705 (1980); *accord Almond Grading Co. v. Shaver*, 74 N.C. App. 576, 578, 329 S.E.2d 417, 418 (1985).  "[The movant] must show that there are no genuine issues of fact, that there are no gaps in his proof, that no inferences inconsistent with his recovery arise from the evidence, and that there is no standard that must be applied to the facts by the jury."  *Parks Chevrolet, Inc. v.*

---

which were ex parte, with commentary on the merits of the pending motion.  The Court issued an Order directing Defendants to refrain from engaging in any further ex parte communications or face appropriate sanctions.  (*See* ECF No. 50.)  In deciding this motion, the Court has not considered Wang's communications, which are not part of the record.

*Watkins*, 74 N.C. App. 719, 721, 329 S.E.2d 728, 729 (1985); *see also Kidd v. Early*, 289 N.C. 343, 370, 222 S.E.2d 392, 410 (1976) (same).  For that reason, it is "rarely . . . proper to enter summary judgment in favor of the party having the burden of proof." *Blackwell v. Massey*, 69 N.C. App. 240, 243, 316 S.E.2d 350, 352 (1984).

## A.  Conversion

17.  Defendants concede that they have kept possession of and refused to return a large number of component parts of the Durand, along with the molds, dies, and related equipment needed to make them.  (*See* Defs.' Br. in Opp'n 14, ECF No. 42 ["Opp'n"].)  Wining Taylors argues that this concession, along with the undisputed evidence, requires summary judgment in its favor as to the claim for conversion.  (*See* Pl.'s Br. in Supp. 14–15, ECF No. 39 ["Br. in Supp."].)  The Court agrees with Wining Taylors.

18.  Conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956) (citation and quotation marks omitted). "The essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner." *Addison Whitney, LLC v. Cashion*, 2017 NCBC LEXIS 51, at *15 (N.C. Super. Ct. June 9, 2017) (quoting *Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 86, 665 S.E.2d 478, 488 (2008)). "Where there has been no wrongful taking or disposal of the goods, and the defendant has merely come rightfully into possession and then refused to surrender

them, demand and refusal are necessary to the existence of the tort." *Levin v. Jacobson*, 2015 NCBC LEXIS 111, at *27 (N.C. Super. Ct. Dec. 7, 2015) (citation and quotation marks omitted).

19. All of the material facts are undisputed. Wining Taylors is the rightful owner of the component parts, molds, dies, and other equipment used in producing the Durand. (*See* Dep. Y. Wang 118:19–119:18.[2]) It has repeatedly demanded that Defendants return these materials. (*See* Vanker Aff. ¶¶ 23, 27, 28, 40; *see also* Vanker Aff. Exs. 11, 13, 14, 16.) And Wang has admitted that Defendants have not returned these materials to Wining Taylors. (*See* Dep. Y. Wang 118:25–120:2.)

20. Defendants' response consists of two short paragraphs. They do not challenge any of these facts, cite any case law, or cite to the record. Rather, Defendants insist that they are willing to return all of the relevant materials and equipment if Wining Taylors would agree to pay the shipping costs. (*See* Opp'n 14.) In other words, Defendants continue to refuse to return Wining Taylors's property as a means to extract concessions from Wining Taylors. This conditional offer to return the property does not defeat Wining Taylors's claim for conversion. *See Wall v. Colvard, Inc.*, 268 N.C. 43, 49, 149 S.E.2d 559, 564 (1966) ("After an act of conversion has become complete, an offer to return or restore the property by the wrongdoer will not bar the cause of action for conversion.").

21. Given these undisputed facts, the Court concludes that this is the rare case in which it is proper to grant summary judgment in favor of the party bearing the

---

[2] Excerpts of Wang's deposition are attached as an exhibit to the Affidavit of Peter J. Juran in support of Wining Taylors's motion. (*See* ECF No. 38.)

burden of proof. Defendants have exercised possession over the disputed property to the exclusion of Wining Taylors's rights. There are no gaps in Wining Taylors's proof and no standard that a jury must apply to these facts. Accordingly, the Court grants summary judgment in favor of Wining Taylors as to Defendants' liability for conversion.

## B. Breach of Contract

22. "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Branch v. High Rock Lake Realty, Inc.*, 151 N.C. App. 244, 250, 565 S.E.2d 248, 252 (2002) (citation and quotation marks omitted). Both sides agree that a valid contract existed for the purchase of component parts for the Durand. They disagree, however, over whether Defendants breached the contract.

23. Because the parties' contract involves the sale of goods, North Carolina's version of the Uniform Commercial Code ("UCC") governs. *See* N.C. Gen. Stat. § 25-2-102. "In any transaction for goods, the expectation is that the seller will deliver, and the buyer will accept, goods that conform to the contract." *Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp.*, 2018 NCBC LEXIS 84, at *19 (N.C. Super. Ct. Aug. 15, 2018). Goods are conforming "when they are in accordance with the obligations under the contract." N.C. Gen. Stat. § 25-2-106(2). The buyer is entitled to inspect tendered goods and, if they are nonconforming, may choose either to accept or reject them. *See id.* §§ 25-2-513(1), 25-2-601.

24.     Wining Taylors argues, first, that Defendants were required to provide component parts that would be fit for use in connection with the Durand. (*See* Br. in Supp. 14.) Although somewhat unclear, this appears to be a reference to the implied warranty of merchantability or the implied warranty of fitness for a particular purpose, as defined in the UCC. *See* N.C. Gen. Stat. §§ 25-2-314, 25-2-315. Wining Taylors points to evidence that the sample parts provided by Defendants were not cleaned or polished. (*See* Vanker Aff. ¶ 20, Ex. 10; *see also* Vanker Aff. ¶ 18.) On that basis, it argues that the parts were unfit for use, nonconforming, and in breach of the parties' contract.

25.     This is not a suitable basis for offensive summary judgment. To carry its burden, Wining Taylors must show "that there is no standard that must be applied to the facts by the jury." *Parks Chevrolet*, 74 N.C. App. at 721, 329 S.E.2d at 729. Here, even assuming the parts made by Defendants were not polished, a jury would have to determine whether that fact rendered the parts unfit for use. As best the Court can tell, polishing and cleaning does not affect the functionality of the Durand, only its aesthetics. It may be the case that the Durand, which appears to be a high-end device, requires polished components for its intended purpose, but Defendants insist that the requisite quality standards were never communicated to them. (Opp'n 18.) Regardless, a jury must apply the Court's instructions regarding fitness and merchantability, as those terms are used in the UCC, to determine whether Defendants breached their obligations. *See 759 Ventures, LLC v. GCP Apt. Inv'rs, LLC*, 2018 NCBC LEXIS 82, at *13–14 (N.C. Super. Ct. Aug. 13, 2018) (denying

motion for offensive summary judgment after concluding that "the jury must apply a reasonableness standard to the facts it finds").

26. Wining Taylors's second argument fares no better. It is undisputed that Defendants agreed not to use Wining Taylors's patented and proprietary materials for anything other than Wining Taylors's orders. (*See* Dep. Y. Wang 61:3–62:23.) There is conflicting evidence, though, as to whether Defendants breached this obligation. Wining Taylors offers evidence that it says strongly suggests Wang provided patented and confidential materials to Chinese counterfeiters, but Wang expressly denies this. (*See* Vanker Aff. ¶¶ 37–39; Wang Aff. ¶¶ 30–33; Kui Aff. ¶¶ 4, 6–11.) Wang's credibility on this point is a question for the jury that cannot be resolved on summary judgment. *See, e.g., Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 208, 212, 580 S.E.2d 732, 735 (2003).

27. Finally, Wining Taylors offers a third theory: that Defendants breached a second, separate contract to refund Wining Taylors's deposit and return all parts and equipment. (*See* Br. in Supp. 13, 14; Pl.'s Reply Br. 2, ECF No. 44 ["Reply"].) On this point, there are disputes of material fact as to whether a valid contract was ever formed. There is no formal written contract, only a sequence of e-mails between Vanker and Wang. At various points, Wang acknowledges that he intends to refund some amount of the deposit, ship the component parts that had been made, and return the related molds, dies, and equipment. (*See* Vanker Aff. Exs. 17, 24.) Wang even returned several thousand dollars in a sequence of monthly payments. (*See* Vanker Aff. ¶ 42, Ex. 26.) But it does not appear that Wang ever agreed to the

amount of the refund that would be due. (*See* Vanker Aff. Ex. 25.) Wang also stated that he intended to make additional parts, the cost of which he would subtract from any refund. (*See* Vanker Aff. Ex. 25.) Wining Taylors rejected that offer. (*See* Vanker Aff. Ex. 25.)

28. Taken together, these communications do not establish, as a matter of law, that either party made an offer that was accepted by the other. "It is essential to the formation of any contract that there be 'mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds.'" *Creech v. Melnik*, 347 N.C. 520, 527, 495 S.E.2d 907, 911–12 (1998) (quoting *Snyder v. Freeman*, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980)). There is at least a genuine issue of material fact as to whether the parties' seesaw negotiations resulted in a binding agreement and, if they did, what the terms of the agreement were.

29. For these reasons, the Court denies the motion for summary judgment as to Wining Taylors's claim for breach of contract.

## C. Trademark Infringement

30. In its opening brief, Wining Taylors argued that the evidence pointed to the "inescapable" conclusion that Defendants infringed its trademark by collaborating with Chinese manufacturers to make and sell counterfeit versions of the Durand. (Br. in Supp. 17–18.) At the hearing, though, Wining Taylors retreated from this position, conceding that Defendants' denials and the circumstantial nature of the evidence created a genuine issue of material fact.

31. Wining Taylors nevertheless argues that, even in the absence of summary judgment, it is entitled to a permanent injunction against any further trademark infringement. (*See* Reply 6–7.) The Court disagrees. "A permanent injunction is an extraordinary equitable remedy and may only properly issue after a full consideration of the merits of a case." *CB&I Constructors, Inc. v. Town of Wake Forest*, 157 N.C. App. 545, 548, 579 S.E.2d 502, 504 (2003) (citation and quotation marks omitted). The merits of this case have not yet been fully considered, and it would therefore be premature to issue a permanent injunction. *See Levin*, 2015 NCBC LEXIS 111, at *32 (denying motion for permanent injunction as premature).

32. Accordingly, the Court denies both Wining Taylors's motion for summary judgment as to trademark infringement and its request for injunctive relief.

D. Unfair or Deceptive Trade Practices

33. By statute, "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). "The elements for a claim for unfair or deceptive trade practices are (1) defendants committed an unfair or deceptive act or practice, (2) in or affecting commerce and (3) plaintiff was injured as a result." *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 172 N.C. App. 427, 439, 617 S.E.2d 664, 671 (2005) (citation omitted). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001) (citation omitted).

34. Wining Taylors's section 75-1.1 claim is predicated on the allegations that underlie each of its other claims. Genuine issues of material fact remain as to the claims for breach of contract and trademark infringement. As a result, it would be inappropriate to grant summary judgment as to the section 75-1.1 claim to the extent it is based on those underlying claims.

35. As noted, though, the undisputed material facts show that Defendants converted component parts, molds, dies, and related equipment belonging to Wining Taylors. A successful conversion claim could support a finding of unfair or deceptive trade practices if there is additional evidence of "egregious, immoral, oppressive, unscrupulous, or substantially injurious acts." *Bartlett Milling*, 192 N.C. App. at 83, 665 S.E.2d at 487 (citation omitted); *see also Eley v. Mid/East Acceptance Corp. of N.C., Inc.*, 171 N.C. App. 368, 375, 614 S.E.2d 555, 561 (2005) (affirming liability under section 75-1.1 based on evidence that "defendant deprived plaintiff of her property by means of inequitably asserting its relative position of power").

36. Wining Taylors argues that Defendants' actions were "accompanied by sufficiently egregious or aggravating circumstances, as a matter of law." (Br. in Supp. 19.) There is evidence, for example, that Wang threatened to sell Wining Taylors's proprietary materials to someone in China "at a preferred price." (Vanker Aff. Ex. 23.) There is also evidence that manufacturers in China made and sold counterfeit versions of the Durand. (*See* Vanker Aff. ¶¶ 37–39; *see also* Kui Aff. ¶¶ 4, 6–11.) But Wining Taylors has not put forward undisputed evidence that Wang carried out his threat or that he facilitated the misdeeds of Chinese counterfeiters, and Wang

expressly denies having done so. (*See* Wang Aff. ¶¶ 30–33.) Viewed in a light most favorable to Defendants, the evidence could support a finding by the jury that Wang did not share Wining Taylors's patented and proprietary materials with others. *See Suntrust Bank v. Bryant/Sutphin Prop., LLC*, 222 N.C. App. 821, 825, 732 S.E.2d 594, 598 (2012) (holding that "whether the defendant performed the alleged acts" is "a question of fact" (citation and quotation marks omitted)).

37.   The Court therefore denies the motion for summary judgment as to the section 75-1.1 claim.

## E. Damages

38.   Wining Taylors argues that its damages cannot be less than $17,878—the amount of reimbursement remaining from the deposit paid to Defendants. (*See* Br. in Supp. 11, 21, 22.) It requests summary judgment as to damages in that amount and requests that the damages be trebled under section 75-1.1. (*See* Br. in Supp. 21–22.)

39.   The Court concludes that it would be premature to enter judgment as to damages. It is not clear that the measure of damages for conversion should be the remaining amount of the unrefunded deposit (an amount Defendants dispute). Also, as discussed, a jury must resolve factual disputes over Wining Taylors's claims for breach of contract, trademark infringement, and unfair or deceptive trade practices. The amount of damages will depend on the jury's verdict as to those claims and is therefore not susceptible to resolution on summary judgment.

## III.
## CONCLUSION

40. For the foregoing reasons, the Court **GRANTS** Wining Taylors's motion for summary judgment as to liability on its conversion claim and **DENIES** the motion in all other respects.

**SO ORDERED**, this the 5th day of April, 2019.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
for Complex Business Cases